UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ANTONIO ABEL, a single person; and
KEITH A. FREEMAN, a single person,

        Plaintiffs,

      v.

CITY OF ALGONA, a Washington
municipal corporation; STEVEN T.
JEWELL and JANE DOE JEWELL,
husband and wife; DAVID HILL and
JANE DOE HILL, husband and wife;
and JOSEPH SCHOLZ, a single person,

        Defendants.

CASE NO. C07-956BHS

ORDER GRANTING IN PART
DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT
AND ORDERING THE
PARTIES TO SHOW CAUSE

This matter comes before the Court on Defendants' Motion for Summary Judgment (Dkt. 62). The Court has considered the pleadings filed in support of and in opposition to the motion, the parties' oral argument heard on October 2, 2008, and the remainder of the file and hereby grants the motion in part for the reasons stated herein.

## I. PROCEDURAL BACKGROUND

On May 18, 2007, Plaintiffs Antonio Abel and Keith A. Freeman filed suit in King County Superior Court for violation of their rights to equal protection and due process of law under the United States Constitution, discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3 and RCW 49.60.210, negligent supervision, and breach of employment agreement. Dkt. 1 at 12-14. The case

was removed to this Court on June 19, 2007. On March 20, 2008, the Court granted Plaintiffs' Motion to Amend Complaint to remove their claims of discrimination under Title VII and RCW 49.60.210 and add a claim for negligent hiring. Dkt. 34.

On April 2, 2008, Plaintiffs filed a First Amended Complaint. Dkt. 35. In their amended complaint, Plaintiffs allege that (1) Defendants have maintained an official or pervasive policy, practice and/or custom which has deprived Plaintiffs of a federal constitutional or statutory right, including without limitation, rights to equal protection, individual security, privacy, association, employment and employment opportunities under the due process and equal protection clauses of the United States Constitution and in violation of 42 U.S.C. § 1983; (2) Defendant City of Algona negligently hired and supervised Defendant Jewell under state law; and (3) Defendants breached Plaintiffs' employment agreement. Under the damages section of Plaintiffs' amended complaint, Plaintiffs allege that the "City constructively terminated Abel, and may constructively terminate Freeman by the time of trial." *Id.* at 8.

## II. FACTUAL BACKGROUND

Unless otherwise indicated, the following facts are undisputed or taken in the light most favorable to Plaintiffs, the nonmoving parties:

Plaintiffs were police officers employed by the City of Algona ("City") and the Algona Police Department ("Department"). Steven Jewell is the former Chief of Police of the City, David Hill is the current Mayor of the City, and Joe Schulz is the former Mayor of the City. Mr. Hill became the acting mayor on October 27, 2006. Plaintiffs allege that there was and is personal and political animosity between Dwain Beck, who was a member of the Algona City Council, and the Department, Mr. Jewell, Mr. Hill and Mr. Schultz. In particular, Plaintiffs allege that Mr. Beck's city council vote against the hiring of Mr. Jewell as Chief of Police was a factor contributing to this animosity. Plaintiffs allege that this animosity led to five criminal investigations into Beck's conduct, none of which led to any charges being filed.

On or about October 21, 2006, Mr. Beck contacted Officer Freeman on Officer Freeman's personal cell phone and alleged that Mr. Beck's neighbor, Kim Carter, had come onto his property and into his home without permission. Mr. Beck and Ms. Carter had been involved in an ongoing dispute, and Mr. Beck alleged that Ms. Carter was harassing him in her effort to recover on a civil judgment she had obtained from Mr. Beck. Following Mr. Beck's phone call, Officers Abel and Freeman proceeded to Ms. Carter's residence. The officers resolved Mr. Beck's complaint by giving Ms. Carter a verbal "no trespass" order. Ms. Carter later met with Chief Jewell, after first contacting then-Mayor Shultz, to complain about the officers' actions. Ms. Carter conveyed to Chief Jewell her concerns about the officer's visit, and allegedly stated that Mr. Beck had previously told her that the police worked for Mr. Beck.

On or about October 23, 2006, Chief Jewell issued a department memo, ordering police personnel to have no further contact with Mr. Beck because he was under criminal investigation. Chief Jewell then issued a "Notice[s] of Investigation and Administrative Assignment" to Plaintiffs and placed Officers Abel and Freeman on "administrative reassignment" with pay, pending investigation of the officers for criminal conduct, failure of a duty to report misconduct, and association with known offenders. The notices issued to Plaintiffs cited three agency policies but did not indicate any specific state crimes for which the Plaintiffs were under investigation. At oral argument, Defendants maintained that Plaintiffs were investigated for official misconduct, pursuant to RCW 9A.80.010, and failure of duty, pursuant to RCW 42.20.010.

Included in the notices were the following directives:

- You shall remain at your residence, available by telephone and able to respond to the department office within one-hour notice between the hours of 8:00 a.m. to 12:00 p.m., and 1:00 p.m. to 5:00 p.m [Monday through Friday, excluding holidays].
- You are not required to call the office on designated holidays, nor will these holidays be considered as days worked.
- Sick leave and vacation may be taken, but must be pre-approved by the Chief of Police.

Dkt. 63-2, 21-25.

The officers were also required to surrender their service weapons, badges, police identification, building keys, and cell phones and were denied access to the Algona Police Department's computer equipment and to the department itself without official authorization and escort from Chief Jewell. The officers were further instructed not to speak with other department members about the circumstances of the incident, and were directed not to become involved in any law enforcement activities, excluding response to court subpoenas. The officers contend that they were not afforded an opportunity to present their side of the story prior to being placed on administrative reassignment.

On or about October 24, 2006, Chief Jewell and the City asked the Federal Way Police Department to investigate Ms. Carter's claims against the officers. The Federal Way Police Department interviewed Officer Freeman but did not interview Officer Abel. On or about November 14, 2006, the Federal Way Police Department concluded that the investigation had failed to establish that a crime had been committed. The Federal Way Police Department investigation was later forwarded to the City of Lakewood Special Prosecutor, who, on January 3, 2007, concluded, "[g]iven the lack of evidence of improper motives, words, or conduct by the officers in question, I do not believe criminal charges are warranted." Dkt. 63-2 at 29.

On January 9, 2007, Mayor Hill sent a formal request for an administrative investigation into Plaintiffs' conduct to the Washington State Patrol ("WSP") on behalf of the City of Algona, after the Algona City Council approved referring the investigation to WSP. Mayor Hill abstained from this vote. WSP approved the request to investigate on February 2, 2007.

In February 2007, the City hired a new Chief of Police, A.W. McGehee, who is not party to this suit. On or about February 15, 2007, Chief McGehee informed Plaintiffs that they were being returned to normal duties. The WSP report was completed on May 30, 2007, and Plaintiffs received letters of exoneration on June 25, 2007.

Plaintiffs contend that after the reassignment, they returned to a working environment "riddled with innuendo that [Plaintiffs'] suspension was their fault." Dkt. 73 at 14; Dkt. 74 at 6. Plaintiffs also contend that "the entire experience and defendants' behavior . . . made returning to work impossible." *Id.*

According to Plaintiffs, no other police officer has ever been placed on administrative assignment by the City or any prior police chief. Plaintiffs further contend that other officers have received "less discipline for more egregious actions and inactions." In particular, Plaintiffs state that Sargent Daniel Moate, who allegedly engaged in sexual misconduct while on duty, received more favorable treatment from the Department or City.

Plaintiffs also allege that, during the time Plaintiffs were on administrative assignment, then-Officer Moate was promoted to a sargent position, and "effectively or constructively precluded [Plaintiffs] from even applying for the Sargent position." Dkt. 35 at 4. Defendants submitted evidence that Officer Abel voluntarily withdrew his application for a sargent position on May 30, 2006, and Officer Freeman voluntarily withdrew his name for consideration on June 20, 2006. Dkt. 63-3, 26-27. Plaintiffs did not provide evidence of having applied for any positions.

Neither Plaintiff currently works for the City of Algona. Mr. Abel contends that he was "constructively discharged" in February 2008, but does not indicate any specific date. Mr. Freeman contends that he was constructively discharged "effective" July 3, 2008. In a letter dated June 4, 2008, addressed to Chief McGhee, Mr. Freeman resigned his position with the City. Dkt. 84-3 at 8. It is unclear when Mr. Abel actually resigned.

### III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

On July 29, 2008, Defendants filed a Motion for Summary Judgment, contending that (1) Plaintiffs' due process and employment opportunities claims fail because they have not been deprived of a property or liberty interest, (2) Plaintiffs' equal protection claim fails because they are not members of a protected class, (3) Plaintiffs' privacy,

individual security, and association claims fail because the restrictions imposed on Plaintiffs were rationally related to a legitimate state interest, (4) Plaintiffs' § 1983 claims against Defendant Shultz fail because he did not participate in any alleged unconstitutional actions, (5) Plaintiffs' § 1983 claims as to Defendants Shultz, Hill, and Jewell, and their spouses, fail because they are entitled to qualified immunity, and (6) Plaintiffs' § 1983 claims against the City fail because Plaintiffs cannot show that constitutional violations were taken pursuant to an official policy or custom. Dkt. 62. Defendants also seek dismissal of Plaintiffs' breach of employment contract because Plaintiffs failed to establish that the collective bargaining agreement was breached and failed to follow the requisite grievance procedure. Finally, Defendants seek dismissal of Plaintiffs' negligent hiring and supervision claims because the claims lack factual support.

Plaintiffs oppose the motion for summary judgment, contending that (1) Defendants deprived Plaintiffs of their liberty and failed to provide the opportunity for a hearing, (2) Defendants deprived Plaintiffs of their property because Plaintiffs were constructively discharged and were not provided an opportunity to be heard, (3) Defendants violated Plaintiffs equal protection rights by selectively treating them differently than other officers, (4) the individual Defendants are not entitled to qualified immunity because Defendants violated Plaintiffs' "clearly established" constitutional rights, and (5) the City is a proper party to the lawsuit because Defendant Jewel was the final policy-making authority for the unconstitutional acts, and Defendants Schultz and Hill were the final policy-making authority for City Hall. In addition, Plaintiffs contend that their negligent hiring and supervision claims should survive summary judgment because the facts demonstrate that the City failed to properly hire and supervise Defendant Jewell. Finally, Plaintiffs contend that their breach of employment agreement claim should proceed because Defendants precluded Plaintiffs' efforts to comply with the

CBA grievance procedure, and because Plaintiffs' employee rights under the CBA were violated.

In their reply, Defendants move the Court to strike the "inadmissible evidence" Plaintiffs submitted with their responsive pleading. Dkt. 83.

At oral argument, Plaintiffs maintained that their due process claims are not limited to Defendants' conduct beginning with the reassignment in October 2006, but rather arise from Defendants' conduct beginning in 2005, when Defendants "came to power [in the Algona city government] and planned to clean house." Plaintiffs contend that their liberty interests were implicated by Defendants' conduct because Plaintiffs faced the threat of losing their jobs and being sent to prison. Plaintiffs contend that Defendants abused their power by initiating numerous investigations into the conduct of members of the city government, and targeted Plaintiffs because they were allies of Mr. Beck, and because of their union membership. Plaintiffs further maintain that their property interests were implicated, and for the first time, cite RCW 41.14.120 in support of their claim that a suspension with pay in order to discipline a public employee may trigger due process protections.

## IV. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.     DUE PROCESS OF LAW AND EQUAL PROTECTION**

Section 1983 is a procedural device for enforcing constitutional provisions and federal statutes; the section does not create or afford substantive rights. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). In order to state a claim under 42 U.S.C. § 1983, plaintiffs must demonstrate that (l) the conduct complained of was committed by a person acting under color of state law and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or by the laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327 (1986). Section 1983 is the appropriate remedy only if both elements are satisfied.

Analysis of a procedural due process claim under Section 1983 involves two questions: (1) whether the plaintiff has been deprived of a life, liberty, or property interest that is constitutionally protected, and, if so, (2) whether the "procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

Plaintiffs and Defendants agree that Defendants acted under the color of state law. The parties dispute whether Plaintiffs were deprived of any constitutional rights.

**1. Plaintiffs' Claims Against the City: Municipal Liability**

Defendants contend that Plaintiffs' § 1983 claims against the City should be dismissed because Plaintiffs cannot show that constitutional violations occurred as a result of an official policy or custom.

The language of Section 1983 is expansive and does not expressly incorporate common law immunities. *Owen v. City of Independence, Mo.*, 445 U.S. 622, 637 (1980). Municipalities and other local governing bodies, such as school districts, are subject to suit under Section 1983. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978); *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004). Municipalities are not liable merely for employing tortfeasors, and respondeat superior is an insufficient basis for establishing municipal liability. *Monell*, 436 U.S. at 690. Rather, plaintiffs must establish that a policy or custom of the municipality caused the constitutional injury. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination*, 507 U.S. 163, 166 (1993). This requirement distinguishes acts of the municipality from acts of municipal employees. *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999).

Municipal liability may be imposed for a single decision by municipal policymakers and may attach when the decision-maker possesses final authority with respect to the action ordered. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). However, the fact that a particular official has discretion in the exercise of particular functions does not, without more, give rise to municipal liability. *Gillette v. Delmore*, 979

ORDER - 9

F.2d 1342, 1349-1350 (9th Cir. 1992) (finding that a fire chief with discretion to hire and fire employees was not sufficient to establish municipal liability unless he was responsible for establishing the City's employment policy).

While it is unclear from the record whether Mr. Jewell, as Chief of Police, was responsible for establishing employment policy, the City may have nonetheless ratified the reassignment of Plaintiffs. On January 9, 2007, after a city council vote, Mayor Hill wrote the Washington State Patrol, requesting that they conduct an administrative investigation into Plaintiffs' conduct. Mayor Hill stated in the letter, "[w]e currently have two of our . . . officers on paid administrative leave resulting from a review of their conduct." Dkt. 63-2 at 31. In this letter, Mayor Hill also wrote about his own involvement in the investigation. For purposes of this motion only, the Court assumes, without deciding the issue, that the City of Algona can be held liable under Section 1983.

**2. Plaintiffs' Claims Against Individual Defendants: Qualified Immunity**

Defendants maintain that Plaintiffs' § 1983 claims against the individual Defendants fail because these Defendants are entitled to qualified immunity.

Defendants in a Section 1983 action are entitled to qualified immunity from damages for civil liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The existence of qualified immunity generally turns on the objective reasonableness of the actions, without regard to the knowledge or subjective intent of the particular official. *Id*. at 819.

In analyzing a qualified immunity defense, the Court must determine: (1) whether a constitutional right would have been violated on the facts alleged, taken in the light most favorable to the party asserting the injury; and (2) whether the right was clearly established when viewed in the specific context of the case. *Saucier v. Katz*, 121 S. Ct. 2151, 2156 (2001). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct

was unlawful in the situation he confronted." *Id.* "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citations omitted).

As discussed below, Plaintiffs fail to demonstrate that the individual Defendants' actions violated Plaintiffs' property or liberty rights under the Constitution. Even if Plaintiffs had identified such violations, the rights Plaintiffs allege to have been violated were not clearly established as reflected by case law cited below. Thus, the individual Defendants are entitled to qualified immunity.

### 3. Plaintiffs' Property Interest Claim

In their amended complaint, Plaintiffs allege that Defendants deprived them of their property interests in their public employment, in violation of their due process rights. Dkt. 35, 6-7. Plaintiffs also alleged that they were "effectively or constructively precluded" from applying for a promotion to sargent because Plaintiffs were on "house arrest" during the promotion of at least one officer. *Id.* at 4. Defendants move for summary judgment, contending that Plaintiffs have no actionable claim for depravation of property interests because they retained their jobs, continued to receive full salary and benefits while on administrative leave, and voluntarily withdrew their names from consideration for promotions. Dkt. 62 at 6. In their response, Plaintiffs contend that they were "constructively terminated, and thereby deprived of a property interest without . . . due process." Dkt. 71 at 13.

"Public employees who can only be discharged for cause have a constitutionally protected property interest in their tenure and cannot be fired without due process." *Gilbert v. Homar*, 520 U.S. 924, 928-929 (1997). The parties here do not dispute that Plaintiffs had a property interest in their public employment as police officers. Rather, the parties dispute whether Defendants' "administrative reassignment" implicates property rights under the Constitution.

The first issue for the Court to address is whether an administrative reassignment or suspension with pay can deprive a party of a property interest. If a property interest is implicated, the second step is to determine whether the procedures attendant upon that deprivation are constitutionally sufficient. *See Ky. Dep't Corr., supra.* Because the Court finds no violation of Plaintiffs' property interests, the Court does not reach the second step.

As stated in Defendants' motion, the Supreme Court has not decided whether due process protections extend to "discipline" of tenured public employees, short of termination. *Id.* at 929. In *Gilbert*, the respondent challenged his suspension without pay on due process grounds because he was not first provided a hearing. The petitioner had suspended the respondent without pay after learning that the respondent had been charged with a felony. While not deciding the issue directly, for purposes of deciding *Gilbert*, the Court "assumed" that suspension without pay could infringe upon a protected property interest, and went on to analyze whether the respondent was entitled to a pre-suspension hearing. *Id.* The Court suggested in dicta that, where the government has an interest in immediately terminating a tenured employee, it can avoid the necessity of providing a pre-deprivation hearing by suspending the employee with pay. *Id.* (*citing Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 544-545 (1985)).

Defendants cite several district court cases as support for the proposition that a suspension with pay never implicates a protected property interest. Dkt. 62, 7-9 (*citing Koelsch v. Town of Amesbury*, 851 F. Supp. 497 (D. Mass. 1994), *Gates v. Sicaras*, 706 F. Supp. 169 (D. Conn. 1989), and *Weg v. Macchiarola*, 729 F. Supp. 328 (S.D.N.Y. 1990) and Dkt. 83 (*citing Stearns-Groseclose v. Chelan County Sherrif's Dept.*, 2006 WL 195788 (E.D. Wash. 2006)). At oral argument, Defendants stated that, "as a matter of law," a paid suspension is not discipline, and that even a suspension that persists for years would not implicate property interests under the Constitution.

Some courts, however, have recognized that a suspension with pay, or a reassignment of employment duties, could affect a protected property interest under certain circumstances. For example, while ultimately finding no due process violation, a United States District Court outside of the Ninth Circuit, in an unpublished opinion, found that a "suspension, even with pay, could implicate a plaintiff's status within the [place of employment] on issues such as seniority, vacation and retirement status." *Viola v. Burough of Throop*, 2008 WL 3200710 (M.D. Pa.); *see also Parrett v. City of Connersville*, 737 F.2d 690, 694 (7th Cir. 1984) (police chief alleging that political retaliation motivated his permanent reassignment to a "line captain" position in a basement office with no duties could be effectively deprived of a property interest even if the same salary is maintained).

This Court concludes that even if a suspension or reassignment of duties with pay could implicate a property interest, Plaintiffs' property interest claim should nonetheless be dismissed.[1] Plaintiffs fail to present a triable issue of fact that supports a finding that Defendants interfered with a protected property interest in their public employment during the four-month administrative reassignment, when Plaintiffs received full pay and benefits. As Defendants maintain in their motion, Plaintiffs voluntarily withdrew their names from consideration from the sargent position after being reinstated, and were fully reinstated as officers after a four-month "reassignment." Plaintiffs have provided no

---

[1] At oral argument, Plaintiffs for the first time cite RCW 41.14.120 in support of their property interest claims. Because RCW 41.14.120 applies to sheriffs, presumably Plaintiffs instead intend to cite RCW 41.12.090, which applies to city police. This statute states, in part, "[n]o person in the classified civil service . . . shall be removed, suspended, demoted, or discharged except for cause." Plaintiffs fail to provide any legal authority that (1) suspension with pay is implicated by this statute, or (2) Plaintiffs' property interests under the Constitution are implicated by this statute. Plaintiffs also did not address the issue of whether statutory remedies under state law were first exhausted prior to filing this action.

evidence in support of their claim in their complaint that they were "effectively or constructively precluded from even applying" for a promotion while they were restricted to their homes during the reassignment, and Plaintiffs do not address the issue of promotion opportunities in their response. Rather, Plaintiffs maintain that a property interest is implicated, based on constructive discharge.

## *Constructive Discharge*

In their response to Defendants' motion for summary judgment, Plaintiffs claim that there is a triable issue of fact as to whether Plaintiffs were "constructively discharged." Dkt. 71 at 13. Both Plaintiffs state in their depositions, "when I was finally exonerated by each of the repeated investigations against me, I was only then allowed to leave my house and return to a hostile workplace riddled with comments and innuendo that everything which occurred to me was somehow my fault, and a new police chief and mayor who made it crystal clear that I did not have any future at the City as it scrambled to hire a younger less experienced Sargent while I was on suspension . . . I could not work under such deliberate oppression by the City." Dkt. 73 at 14; Dkt. 74 at 6. Defendants have moved to strike these statements as inadmissable on various grounds, including that some of these statements are conclusory, argumentative, lack foundation, lack personal knowledge, and/or are speculative. The Court agrees that striking these statements is proper. However, even considering these statements, dismissal of Plaintiffs' constructive discharge claim is appropriate.

Defendants first move to dismiss Plaintiffs' constructive discharge claim because Plaintiffs did not include the constructive discharge allegation as a cause of action in their complaint. Even assuming Plaintiffs properly pled their constructive discharge allegation, the claim should nevertheless be dismissed for the reasons discussed below.[2]

---

[2]Plaintiffs did include the allegation of constructive discharge in the damages section of their complaint. Dkt. 35 at 8.

At the outset, Plaintiffs provide no legal authority to support their claim that they were constructively discharged, nor do Plaintiffs provide legal authority to support their claim that such a constructive discharge could trigger procedural due process protections in a claim brought under § 1983.

While not involving a case brought under § 1983, the Ninth Circuit has held that a plaintiff alleging constructive discharge in a discrimination claim under Title VII "must show there are triable issues of fact as to whether 'a reasonable person in [his] position would have felt [he] was forced to quit because of intolerable and discriminatory working conditions.'" *Hardage v. CBS Broadcasting, Inc.*, 427 F.3d 1177, 1184 (9th Cir. 2005). A plaintiff must also demonstrate that the intolerable conditions existed at the time of the plaintiff's resignation. *See Hardage* at 1184-1185; *see also Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1465 (9th Cir. 1994).

This Court did not find a Ninth Circuit opinion which addressed the issue of whether a claim of constructive discharge brought under § 1983 triggers procedural due process protections. The Seventh Circuit addressed this issue in *Levenstein v. Salafsky*, 164 F.3d 345 (7th Cir. 1998). In that case, the plaintiff claimed that he was constructively discharged as a result of a suspension and subsequent reassignment of duties, and was thereby deprived of a property interest in his employment without an adequate hearing. *Id.* at 351. The Court held that the plaintiff's claim survived a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) after the defendants asserted qualified immunity.

Plaintiffs' constructive discharge claim here differs from the plaintiff in *Levenstein*, who had not been reinstated in his position as a university medical department head, but rather continued to work in an assigned remedial position where he was forbidden to see patients, and still continued to face threatened termination during an 11-month investigation. Here, at the time Mr. Abel and Mr. Freeman allege to have been constructively discharged, they were no longer under administrative reassignment and

had resumed their full duties as police officers. After they were reinstated on February 15, 2007, both officers resumed their full duties as police officers for a considerable time prior to resigning: Mr. Abel alleges to have been constructively discharged in February 2008, and Mr. Freeman alleges to have been constructively discharged on July 3, 2008.

In addition, when Plaintiffs were fully reinstated in February 2007, Chief Jewell, who had initiated the investigation of Plaintiffs, "reassigned" them, and ordered them to remain at their homes during work hours, had been replaced by a new police chief who is not party to this case. Plaintiffs' claim fails to demonstrate that intolerable conditions existed at the time of their resignations such that a reasonable person would have been forced to resign, because they were no longer restricted to remain at home, and had been reinstated and assumed full duties as police officers. Plaintiffs' general statements that their workplace was "riddled with innuendo" and that the new police chief and mayor "made it crystal clear that [Plaintiffs] did not have a future with the City" are not sufficient to survive summary judgment. *See* Fed. R. Civ. P. 56(e)(2) ("[w]hen a motion for summary judgment is properly made . . . an opposing party['s] response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial"); *see also Lujan,* 497 U.S. at 888-89 (conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed).

At oral argument, Plaintiffs emphasized that Defendants' alleged violations of Plaintiffs' due process rights began in 2005, when Defendants "came to power." Plaintiffs provided several declarations in support of their contention that Defendants had a plan to "clean house" and specifically targeted Plaintiffs based on their relationship with Mr. Beck, as well as their union membership. Even assuming that this evidence is admissible, Plaintiffs fail to provide any evidence that these conditions existed at the time Plaintiffs allege to have been constructively discharged.

For these reasons, Plaintiffs' property interests claims are dismissed as to all Defendants.

### 4. Liberty Interests

In their complaint and response to Defendants' motion for summary judgment, Plaintiffs appear to allege several violations of Plaintiffs' liberty rights. Plaintiffs' complaint includes "without limitation" a cause of action alleging violations of rights to individual security, privacy, and association. Plaintiffs' response also alleges that, by imposing the restrictions such as requiring Plaintiffs to remain at their homes during the administrative assignment, Defendants violated their right to travel, right of association, and right to exercise their religion. Dkt. 71 at 11. Plaintiffs also allege that Defendants caused harm to their reputations as police officers, thereby depriving Plaintiffs of a liberty interest in their reputations. Dkt. 71 at 13.

In their motion for summary judgement, Defendants contend that the restrictions imposed upon Plaintiffs were constitutional because each was rationally related to a legitimate state interest. Dkt. 83 at 4. Defendants also move to dismiss any claims alleging that Defendants violated Plaintiffs' liberty interests by harming their reputations because such a claim is not actionable. Dkt. 62 at 9.

*Algona Police Department Policy*

Defendants urge the Court to evaluate Plaintiffs' liberty interest claims under the rational basis standard set out in *Kelley v. Johnson*, 425 U.S. 238 (1946). In *Kelley*, the Supreme Court upheld a police department hair-grooming policy as not violating the plaintiff's liberty rights because the policy was not "so irrational that it [could] be branded as arbitrary." *Kelley*, 425 U.S. at 248. Mr. Abel and Mr. Freeman urge the Court to instead evaluate these claims under a strict scrutiny standard, as applied by the Seventh Circuit in *Pienta v. Village of Schaumburg, Ill.*, 710 F.2d 1258 (7th Cir.1983).

In *Pienta*, the court found that *Kelley* applied a rational basis standard because the *Kelley* plaintiff's claim was "grounded solely in the general liberty language of the due process clause." The *Pienta* court instead applied a strict scrutiny standard because the

*Pienta* plaintiffs challenged "limitations on rights specifically protected by other parts of the Constitution." *Id.* at 1260.

In *Crain v. Board of Police Com'rs of Metropolitan Police Dep't of City of St. Louis*, 920 F.2d 1402, 1406-1407 (8th Cir. 1990), the Eighth Circuit noted that *Pienta* was the only case that applied strict scrutiny review to cases challenging police department policies. The *Crain* court rejected the reasoning in *Pienta*, stating that the court "do[es] not read *Kelley* as applicable only to challenges based on general liberty interests." *Id.* at 1408.

This Court adopts the reasoning in *Crain*, and concludes that Defendants' administrative reassignment was rationally related to a legitimate interest. In *Crain*, the plaintiff challenged the police department's sick leave policy, which prohibited an officer on sick leave from leaving his or her residence except to obtain medical treatment or attention. The challenged policy did not limit this restriction to working hours. *Id.* at 1406. In holding that the policy did not infringe upon the plaintiff's liberty interests in his rights to freely exercise religion, vote, travel, and freely associate, the court reasoned as follows:

> The police department, as a paramilitary organization, must be given considerably more latitude in its decisions regarding discipline and personnel regulations than the ordinary government employer. Importantly, the restrictions that appellants complain of are not restrictions of their rights at all times, but rather are limitations placed on their activities only when officers represent that they are too ill to report for duty.

*Id.* at 1409.

Whatever the wisdom in restricting Plaintiffs to their homes during working hours for four months, the Court defers to the decision of the Algona Police Department to impose such a restriction pending the outcome of the criminal and administrative investigations into Plaintiffs' conduct. The Court concludes that the reassignment was rationally related to the police department's interest in ensuring that their officers were in compliance with regulations and the law.

_Specific Liberty Interests_

Plaintiffs have failed to demonstrate that Defendants violated any of their liberty rights under the Constitution. First, it is unclear how Plaintiffs' "individual security" or "privacy" rights were implicated, and Plaintiffs did not address these claims in their response. Second, Plaintiffs fail to demonstrate that their rights to travel or rights to exercise their religion were infringed upon by the restriction to remain at their residences, because Plaintiffs have not shown that these restrictions differed from restrictions imposed as a result of a typical work day. During normal working hours, police officers are not free to travel where they wish; in return for compensation, they are assigned duties and places of assignment.

In addition, Chief Jewel's notice informed Plaintiffs that they were still entitled to benefits such as vacation and sick leave. Plaintiffs have not shown that they were precluded from obtaining permission to leave their homes to practice religion, and they certainly were not precluded from doing so outside of working hours. Third, the restriction placed on Plaintiffs that forbade them from associating with police department personnel was a rational requirement for the department's investigation into police misconduct.

Finally, Plaintiffs' liberty interest claim based on damage to reputation also fails. At oral argument, Plaintiffs alleged that Defendants damaged their reputations by conducting the investigation. Plaintiffs contend that, in addition to the damage caused to their general reputations as police officers, Plaintiffs must now disclose on future applications that they have been subject to a criminal investigation.

Injury to an employee's reputation, without more, is not a deprivation of liberty. _Paul v. Davis_, 424 U.S. 693 (1976). A deprivation of liberty may arise if the injury to reputation occurs in conjunction with another protected interest. _Id._ at 790; _see also Ulrich v. City and County of San Francisco_, 308 F.3d 968, 982 (9th Cir. 2002). Because

Plaintiffs have failed to demonstrate the violation of another protected interest, their injury to reputation claim fails.

For theses reasons, Plaintiffs' liberty interest claims as to all Defendants are dismissed.

### 5. Equal Protection

Plaintiffs also allege that they were deprived of property and liberty rights in violation of the Equal Protection clause of the Constitution. Dkt. 35 at 7. Plaintiffs contend that "defendants selectively treated plaintiffs differently and that treatment was both invidious and unconstitutional." Dkt. 71 at 14. Defendants move for summary judgment on the grounds that Plaintiffs' claim fails because they are not members of a protected class, and because Plaintiffs have not shown that the alleged discrimination is "patently arbitrary" or that it "bears no relation to a legitimate governmental interest." Dkt. 62 at 10.

Plaintiffs have not alleged that they are members of a protected class. Rather, Plaintiffs claim that they were selectively treated and received unequal enforcement of police department disciplinary policies. Dkt. 71 at 14. Plaintiffs cite *LeClair v. Saunders*, 627 F.2d 606 (2nd Cir. 1980), in support of this claim.

Plaintiffs appear to allege an equal protection claim based on selective enforcement. It is not clear that the Ninth Circuit has adopted the test in *LeClair*; in any event, Plaintiffs' claim under *LeClair* fails as a matter of law. In *LeClair*, liability in an equal protection case "should depend on proof that (1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as . . . intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *LeClair v. Saunders*, 627 F.2d at 609-610. The *LeClair* court also drew from a criminal case, which held that a defendant alleging selective or discriminatory prosecution bears a "heavy burden of establishing, at least prima facie, that others similarly situated have not been

proceeded against because of *conduct of the type* forming the basis of the charge against [the defendant]." *Id.* at 609 (citing *United States v. Berrios*, 510 F.2d 1207 (2d Cir. 1974)) (emphasis added). "Mere failure to prosecute others is not a basis for a finding of denial in equal protection." *Id.* at 608 (citing *United States v. Rickenbacker*, 309 F.2d 462 (2d Cir. 1962)).

Plaintiffs' equal protection claim also fails under a slightly different Ninth Circuit standard cited by Defendants, *Thornton v. City of St. Helens*, 425 F.3d 1158 (9th Cir. 2005). In *Thornton*, the court held that a plaintiff who is not a member of a protected class may properly allege an equal protection claim brought by a "class of one," but must prove that he or she "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Thornton*, 425 F.3d at 1167 (*quoting SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 679 (9th Cir. 2002).

Under both standards, Plaintiffs' equal protection claim fails. Under *LeClair* and *Thornton*, Plaintiffs have not identified any similarly situated parties that were treated differently by the Department or the City. While Plaintiffs make a very generalized allegation that Sargent Moate received less severe disciplinary consequences after engaging in sexual misconduct while on duty, Plaintiffs fail to demonstrate that Defendants' allegations against Plaintiffs involved similar conduct that warranted similar treatment for both Plaintiffs and Sargent Moate. The Court has no basis to evaluate the Department's enforcement of its policies in response to two different allegations of police misconduct. Plaintiffs have not identified incidents where Defendants reacted differently in response to a citizen's complaint similar to Ms. Carter's allegations of police misconduct, or in response to other evidence of similar alleged misconduct.

For these reasons, Plaintiffs' equal protection claims as to all Defendants are dismissed.

**C.    DEFENDANTS' MOTION TO STRIKE**

In its reply, Defendants move to strike numerous statements contained in declarations submitted with Plaintiffs' response. Defendants provide a 17-page matrix of statements that Defendants contend should be stricken on various grounds. The Court declines to determine the admissibility of each of the statements contained in over 200 pages of declarations provided by Plaintiffs, but concludes that much of the evidence provided by Plaintiffs is not admissible.

Much of the evidence submitted by Plaintiffs is not admissible on the basis of relevance. The following declarations contain statements about the investigations into or retaliation against Mr. Beck and other city officials and should be stricken because these investigations have no bearing on whether Plaintiffs' property, liberty, or equal protection rights were implicated by a four-month reassignment or suspension with pay: Declaration of Adena Gustafson, Dkt. 77, 3-8; 11-22; Declaration of Dwain Beck, Dkt. 76; Declaration of Mary Noel, Dkt. 75, 3-8; Declaration of Keith Freeman, Dkt. 73, 4-5; Declaration of Antonio Abel, Dkt. 74.

The following declarations contain statements involving opinions about how the City went "downhill" when Mr. Hill, Mr. Scholz and Chief Jewell became officials of the City, and are not relevant to the issue of whether Plaintiffs' constitutional rights were infringed upon as a result of the reassignment or suspension: Declaration of Adena Gustafson, Dkt. 78, 1-7; Declaration of Dwain Beck, Dkt. 76; Declaration of Mary Noel, Dkt. 75, 1-3; Declaration of Keith Freeman, Dkt. 73, 7; Declaration of Antonio Abel, Dkt. 74, 1-2.

Ms. Gustafson's statement that she believed Chief Jewell intimidated Ms. Carter into filing a citizen complaint against Plaintiffs is inadmissible because she lacked first-hand knowledge. Dkt. 78 at 24. Ms. Gustafson stated that she was not present when Chief Jewell met with Ms. Carter, but said she "assumed" that Chief Jewell intimidated Ms. Carter.

Finally, as discussed above, Plaintiffs' statements in support of their constructive discharge claim are not admissible. Plaintiffs' statements that their workplace was riddled with innuendo and that they were "constructively discharged," as well as their statements that Chief McGhee "made it crystal clear that [Plaintiffs] did not have a future with the City," are conclusory and lack specificity; thus, these statements are not sufficient to overcome Defendants' motion for summary judgment.

Even assuming Plaintiffs' evidence is admissible, Plaintiffs still fail to demonstrate that there is a triable issue of fact as to any of its federal claims against Defendants. While including over 200 pages of declarations in support of their response to Defendants' motion for summary judgment, Plaintiffs fail to direct the Court to any specific evidence that creates a triable issue of fact as to these claims. *See Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (where no factual showing is made in opposition to a motion for summary judgment, the District Court is not required to search the record sua sponte for some genuine issue of material fact).

**D.     ORDER TO SHOW CAUSE REGARDING PLAINTIFFS' STATE CLAIMS**

By this order, the Court dismisses all of Plaintiffs' claims that provided the basis for federal jurisdiction, and does not reach the merits of Defendants' motion to dismiss Plaintiffs' remaining claims under state law. The parties are ordered to show cause, no later than October 13, 2008, why Plaintiffs' remaining state claims for negligent hiring or supervision and breach of employment agreement should not be remanded to state court.

**V. ORDER**

Therefore, it is hereby

**ORDERED** that Defendants' Motion for Summary Judgment (Dkt. 62) is **GRANTED IN PART,** as follows:

1.     Plaintiffs' claims against all Defendants under 42 U.S.C. § 1983 are **DISMISSED WITH PREJUDICE**.

2. Plaintiffs' claims against all Defendants alleging Equal Protection violations are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that Plaintiffs and Defendants are directed to show cause, no later than October 15, 2008, why Plaintiffs' remaining state claims should not be remanded to state court.

DATED this 8th day of October, 2008.

BENJAMIN H. SETTLE
United States District Judge